## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RICHARD FLAMMER,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-898
Spiegel, J.
Hogan, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in

opposition (Doc. 8), and plaintiff's reply memorandum. (Doc. 9).

### PROCEDURAL BACKGROUND

Plaintiff was born in 1972 and was 37 years old at the time of the administrative law

judge hearing. He has a high school education and past relevant work as a motorcycle mechanic

and estimator for motorcycle repairs. Plaintiff filed DIB and SSI applications in November 2005

alleging an onset date of disability of October 1, 2005, due to fractured vertebra in the neck, no

functional use of the right arm, and high blood pressure. Plaintiff's applications were denied

initially and upon reconsideration. Plaintiff then requested and was granted a de novo hearing

before an administrative law judge (ALJ). Plaintiff, who was represented by counsel, appeared at

a hearing before ALJ John Prince. A medical expert (ME) and vocational expert (VE) also

appeared and testified at the hearing.

On June 24, 2009, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff suffers from the following severe impairments: residuals of a 2003 motorcycle accident including complete brachioplexus palsy of the dominant right upper extremity, obesity, anxiety, and depression. (Tr. 18). The ALJ found that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 20). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform sedentary work, except that he has no functional use of his dominant right upper extremity, and despite anxiety and depression, plaintiff is capable of performing simple, routine, and repetitive tasks. (Tr. 20). The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with plaintiff's RFC. (Tr. 21). The ALJ determined that plaintiff was unable to perform his past relevant work. (Tr. 22). Based on the vocational expert's testimony, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. 23). Consequently, the ALJ concluded that plaintiff is not disabled under the Act and therefore not entitled to disability benefits. The Appeals Council denied plaintiff's request for review making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).

2

The Court's sole function is to determine whether the record as a whole contains substantial

evidence to support the Commissioner's decision. The Commissioner's findings stand if they are

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are

supported by substantial evidence, the Court must consider the record as a whole. *Hephner v.*

*Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status

requirements, be under age 65, file an application for such benefits, and be under a disability as

defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423(a). Establishment of a disability is

contingent upon two findings. First, plaintiff must suffer from a medically determinable physical

or mental impairment that can be expected to result in death or that has lasted or can be expected

to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the

impairments must render plaintiff unable to engage in the work previously performed or in any

other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible

individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is

dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To

establish disability, plaintiff must demonstrate a medically determinable physical or mental

impairment that can be expected to last for a continuous period of not less than twelve months.

Plaintiff must also show that the impairment precludes performance of the work previously done,

or any other kind of substantial gainful employment that exists in the national economy. 20

3

C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the

Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is

5

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## MEDICAL EVIDENCE

In September 2003, plaintiff sustained serious injuries in a motorcycle accident. He suffered fractures of his vertebra and ribs and an injury to the right brachioplexus. (Tr. 169). Although the fractures healed, the brachioplexus injury involved detachment of the nerve roots of the cervical spine resulting in a complete loss of function of plaintiff's dominant right upper extremity. Surgery in March 2004 to repair the right brachioplexus did not return function to plaintiff's right arm. Post-surgery, plaintiff experienced neuropathic pain for which he was prescribed Neurontin. By March 2005, his shoulder was stable, pain was minimal, and the Neurontin discontinued. (Tr. 308-315).

Plaintiff was then followed by his primary care physician, Dr. Wallace, who prescribed Motrin and Vicodin for pain. (Tr. 362). Dr. Wallace reported that plaintiff had no range of motion with the right arm, no muscle tone, decreased muscle girth and mass, and a flaccid right arm. (Tr. 361). Plaintiff reported low back pain in June and September 2005. (Tr. 358-359). At his next visit about one year later, plaintiff was started on Cymbalta for "psy" problem. (Tr. 357). In November 2006, Dr. Wallace noted that plaintiff was still complaining of right arm pain and severe pain in his upper back after three to four hours of wearing a shoulder harness. (Tr. 356). In February 2007, Dr. Wallace's notes show plaintiff was still receiving Vicodin for pain and Ativan for anxiety. (Tr. 355). In May 2007, Dr. Wallace noted plaintiff's chronic pain/neuropathy was stable. (Tr. 465). He noted chronic pain in August and November 2007. (Tr. 463-64). In May 2008, Dr. Wallace noted that plaintiff's chronic pain was "more due to neuropathy." (Tr. 461). In February 2009, Dr. Wallace prescribed Vicodin for chronic back pain and Aleve for cervical neck pain. (Tr. 458). In May 2009, Dr. Wallace noted chronic back pain.

8

(Tr. 457).

In a report to the Social Security Administration dated August 29, 2006, Dr. Wallace reported plaintiff's clinical abnormalities to be a flaccid right arm with pain in the right shoulder and cervical spine. (Tr. 340). He reported that plaintiff had a brachial plexus injury to his right shoulder and had a degree of sensory deficit and definite motor loss in the right arm. (Tr. 340). Dr. Wallace noted there was no motion in the right shoulder and elbow and that plaintiff was unable to grip or do fine movement of the right hand. (Tr. 340). Dr. Wallace stated plaintiff had mood swings in association with the injury to his arm, no memory loss or confusion, and had no restrictions in activities of daily living, except for restricted movements of the right hand that required assistance. (Tr. 341). He reported that plaintiff was "constantly depressed and has chronic pain." (Tr. 341).

On August 6, 2007, Dr. Wallace completed a form about plaintiff's ability to do work-related activities. (Tr. 365). He opined that plaintiff could lift/carry 10 pounds occasionally and less than 10 pounds frequently; sit 2 hours, one hour at a time; and stand and walk 2 hours, 20 minutes a time. (Tr. 365). He also opined that plaintiff needed a sit stand option, could never climb ladders, and could occasionally twist, stoop, crouch and climb stairs. (Tr. 366). He reported the medical findings supporting his opinion included an MRI of the right shoulder and back. (Tr. 366). Dr. Wallace also stated that plaintiff could not use his right upper extremity, and cited to his physical examinations and MRI findings in support of this conclusion. (Tr. 367). He also reported that plaintiff needed constant support for his right upper extremity. (Tr. 367).

On August 26, 2006, Dr. C. Khalily, a psychiatrist, provided a telephone report about plaintiff's condition. (Tr. 338). Dr. Khalily stated she saw plaintiff one time on July 7, 2006. (Tr.

9

338, 351-52). Dr. Khalily diagnosed major depression, back pain, and shoulder pain. She prescribed Cymbalta for depression. She opined that based on plaintiff's history he was unable to work. (Tr. 338). Dr. Khalily stated, "Unable to focus. Can't concentrate. Has chronic pain. Doesn't participate in daily activities. He is very restricted. It seems as though he is unable to get things going in order to try to get his life back on track." (Tr. 338).

Dr. David Chiappone performed a psychological examination of plaintiff on September 6, 2006. (Tr. 343). He reported that plaintiff presented with polysubstance abuse in remission, pain disorder with depression, and anxiety. Based on his evaluation, Dr. Chiappone opined that plaintiff could understand simple one and two-step job instructions; was mildly impaired in his ability to remember such tasks; and was mildly to moderately impaired in his ability to maintain concentration and attention. (Tr. 346). He also reported that plaintiff was moderately impaired in his ability to relate to co-workers, supervisors, and the public and in his ability to carry out and persist over time due to anxiety, pain and depression. *Id.* Dr. Chiappone also opined that plaintiff had a moderately reduced stress tolerance. *Id.*

Dr. Khalily saw plaintiff on September 6, 2006, and noted plaintiff's pain was a little better. (Tr. 350). She continued plaintiff with medication. (Tr. 350).

Dr. M. Fritzhand performed a consultative examination of plaintiff on April 2, 2009. (Tr. 427-40). Cervical spine motion was normal and there was no active movement of the right upper extremity. (Tr. 429, 438-39). Muscle strength in the right upper extremity was 1/5 (5/5 is normal), there was atrophy in the right upper extremity, and there were no finger movements. (Tr. 429, 437). There was also diminished sensation over the right upper extremity. (Tr. 429). Dr. Fritzhand reported that plaintiff had no functional use of the right upper extremity. (Tr. 429).

10

Strength in the left upper extremity was normal, and motion was unrestricted. (Tr. 437-39).

Dr. Fritzhand completed a physical capacity form indicating plaintiff had no use of the right upper extremity and had a normal left upper extremity. (Tr. 431). Plaintiff could sit, stand or walk 8 hours each in a work day, and sit 3 hours, stand 2 hours, and walk 2 hours without interruption. (Tr. 432). Plaintiff could never reach, handle, finger, feel or push/pull with his right upper extremity, but he could continuously use his left upper extremity. (Tr. 433). Plaintiff could continuously climb stairs, ramps, ladders and scaffolds, balance, stoop, kneel, and crouch. (Tr. 434). Plaintiff could frequently be exposed to environmental conditions, and he could use public transportation, cook, and sort, handle and use paper/files. (Tr. 435-36).

## OPINION

Plaintiff assigns four errors in this case: (1) the ALJ failed to give appropriate weight to the physicians' opinions in the record in assessing plaintiff's chronic pain; (2) the ALJ erred in assuming plaintiff had normal use of the non-dominant left hand; (3) the ALJ failed to properly evaluate plaintiff's credibility; and (4) the ALJ failed to meet his burden in showing plaintiff could perform other work in the national economy under Step 5 of the sequential evaluation process.

### I. Pain and credibility

Plaintiff's first and third assignments of error challenge the ALJ's assessment of plaintiff's credibility and alleged limitations from chronic pain and will be considered together. Plaintiff contends the ALJ erred by failing to properly credit plaintiff's complaints of chronic pain which would interfere with plaintiff's ability to concentrate and focus for a 40 hour work week. (Doc. 6 at 4). In support of his argument, plaintiff points to the notes of Dr. Wallace,

11

plaintiff's primary care physician, who noted plaintiff experienced chronic pain (Tr. 341), and to a report of Dr. Khalily, a psychiatrist, who noted that plaintiff's chronic pain interfered with concentration and focus. (Tr. 338). Plaintiff also cites to the testimony of Dr. Hulon, the medical advisor at the hearing who testified that plaintiff's allegations about the intensity, persistence, and functional limitations of his symptoms, including pain, are consistent with the record. (Tr. 563).

Plaintiff further argues the ALJ erred by failing to give proper weight to Dr. Wallace's RFC opinion. (Doc. 6 at 5, citing Tr. 363-367). Dr. Wallace noted that plaintiff's inability to use his right arm impacted almost all physical activities, accounted for the pain which would affect plaintiff's ability to work a full 40-hour work week, and would cause plaintiff to miss more than three days of work per month. (Tr. 367).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective

12

medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

The ALJ declined to fully credit plaintiff's allegations of pain and limitations. While plaintiff argues that Drs. Hulon, Khalily, Wallace, and Chiappone all noted plaintiff's "chronic pain" (Doc. 6 at 4, citing Tr. 563, 338, 341, 346, 454-473), the issue is not whether plaintiff experiences chronic pain, which the ALJ acknowledged. (Tr. 21). Rather, the relevant issue is whether the evidence of record shows objective medical evidence confirming the severity of the pain plaintiff alleges or that plaintiff's objectively established medical conditions can reasonably be expected to produce his allegedly disabling pain. *Duncan,* 801 F.2d at 853.

In this regard, the ALJ noted several inconsistencies in the record about plaintiff's complaints of pain. (Tr. 21). Although plaintiff told Dr. Fritzhand he experienced sharp, constant pain in his right upper limb (Tr. 427), he testified at the hearing that the pain comes and goes.

13

(Tr. 570). Dr. Hulon, the ME, testified that small nerve fibers in plaintiff's may still be connected which would explain his intermittent pain, but that medical records indicated plaintiff's pain was adequately managed by Vicoden and Aleve. (Tr. 21).[1]  Contrary to plaintiff's argument that "phantom pain" in his right arm makes his pain worse, the ME testified that plaintiff "maybe" had phantom pain in the right arm, not that he in fact had phantom pain in the right arm as plaintiff asserts. (Doc. 6 at 4 and 6, citing Tr. 562).[2]

Plaintiff also cites to the September 27, 2005 office note from Dr. Atluri, a pain specialist, and argues Dr. Atluri "recommended" a spinal cord stimulator which shows plaintiff's pain was not adequately managed. (Doc. 6 at 7). Dr. Atluri's office note states, "When I realized he was self-pay and the only option we have for his arm pain from the brachial plexus injury is spinal cord stimulation, which obviously he cannot afford because the cost is upward of $40,000, we returned his money. Unfortunately, there is nothing much we can offer him at this time. I do not want to get into opioid issues with his back pain. He has not had an MRI of the lumbar spine. I will see him back as needed." (Tr. 321). Plaintiff was advised by Dr. Atluri that if he believed he needed to be referred to another pain specialist, he was to contact his primary care physician. (Tr. 320).

Although Dr. Atluri's note suggests a spinal cord stimulator was one option to treat plaintiff's pain, there is no indication from the physician's note that he ever actually examined

---

[1]Plaintiff states the "ALJ erred at Tr. 21 when he claimed that the pain was adequately managed with Vicodin and Aleve, as the medical advisor did not testify to this." (Doc. 6 at 7). Plaintiff is incorrect. Dr. Hulon testified, "[H]e's on Vicodin, four a day, which is pretty good. And he takes Aleve, which is an anti-inflammatory and also good pain medication. He's taking those. *It handles it adequately. . . .*" (Tr. 562) (emphasis added).

[2]Dr. Hulon testified, "The pain he's having in his arm, that maybe some phantom pain. It's – it will go away. I don't know, will it get worse, probably not because it's been several years now, been three years, two-and-a-half years." (Tr. 562).

plaintiff (*see* Tr. 327) or that plaintiff ever followed up with his primary care physician to seek additional care for pain management. Indeed, after plaintiff's primary care physician made the referral to Dr. Atluri on September 9, 2005, plaintiff did not see his primary care physician again for nearly one year (Tr. 357, 358), suggesting his pain was not as debilitating as alleged.

The ALJ cited to other inconsistencies in the record. He noted that plaintiff told Dr. Fritzhand he had sharp to dull pain in the cervical spine, yet examination of the cervical spine showed normal range of motion. (Tr. 21, 427). In addition, the ME testified that plaintiff's neck pain could not reasonably be explained by the injury to his neck from the accident as there was no structural damage to the cervical spine and the occipital condyle fracture was not displaced. (Tr. 21, 560-61). The ME further testified that plaintiff's other injuries have or would heal and that x-rays and CT scans of the thoracic and lumbar spine, hips, knees, and ankles were normal. (Tr. 21, 561). The normal findings on clinical examination and testing contradict plaintiff's allegations of disabling pain.

Plaintiff also cites to the opinion of Dr. Khalily in support of his argument that he did not have the attention and concentration to sustain a full 40-hour workweek. Plaintiff argues that Dr. Khalily "saw him more in 2006 (Tr. 348-352)" and "[t]hus, she was a 'treating doctor' in 2006" whose opinion was entitled to deference by the ALJ. (Doc. 6 at 4).

To the extent plaintiff contends the ALJ erred by not deferring to Dr. Khalily's July 2006 opinion, plaintiff's assignment of error is not well-taken. As the ALJ noted, Dr. Khalily was not a treating physician, but examined plaintiff on only one occasion *at the time* she rendered her July 2006 opinion. She saw plaintiff only one other time, in September 2006, when she renewed his prescriptions. (Tr. 350). Her July 2006 report, therefore, was not entitled to any special

15

deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The ALJ additionally noted that other evidence contradicted Dr. Khalily's opinion that plaintiff lacked the attention and concentration for work. The ALJ cited to plaintiff's participation in vocational rehabilitation training as well as psychiatric notes from Norcen Behavioral indicating no observable signs of distress. The ALJ noted that Dr. Beck, the Norcen psychiatrist, "suspected the claimant was seeking treatment to comply with his attorney's wishes to facilitate the disability claim more than from personal need." (Tr. 22).[3] In addition, plaintiff has not cited, nor has the Court found, any evidence in the Norcen Behavioral records supporting Dr. Khalily's opinion concerning plaintiff's ability to attend or concentrate.

Plaintiff also faults the ALJ for not giving "good reasons" for discounting the functional assessment by Dr. Wallace, his treating primary care physician. (Doc. 6 at 5). Contrary to plaintiff's contention, the ALJ reasonably declined to give controlling or significant weight to this opinion because Dr. Wallace's opinion was inconsistent with plaintiff's actual impairments and his own treatment notes. (Tr. 21). As the ALJ noted, Dr. Wallace cited to an MRI of the shoulder and back in support of plaintiff's limitations, yet there are no MRI reports in the record since plaintiff's accident in 2003. (Tr. 21). Dr. Wallace's treatment notes do not reflect an order for an MRI or reported MRI findings. (Tr. 355-362). The ALJ also noted that Dr. Fritzhand's examination in April 2009 revealed no complaints of back pain, normal gait ambulation, and normal lumbar range of motion. (Tr. 21, 428, 439). Nor did Dr. Wallace explain why plaintiff was likely to miss more than three days of work per month. As the ALJ noted, Dr. Wallace's

---

[3]Plaintiff argues there is nothing improper about an attorney referring a client for psychological treatment. This is true. However, the import of Dr. Beck's note is that plaintiff's attorney is likely one source of plaintiff's distress: "I suspect he is only here because his attorney wants him here and that much of his distress is because of the stress of complying with his attorney's needs, not in response to his own needs." (Tr. 382).

opinion was also inconsistent with the RFC finding of Dr. McCloud, the state agency consultant, as well as Dr. Hulon, the ME, who testified that Dr. McCloud's functional assessment seemed reasonable. Finally, Dr. Fritzhand acknowledged that plaintiff had no functional use of his right arm, but that plaintiff's left upper extremity was normal. Dr. Fritzhand also found no restrictions on standing, walking, or sitting. (Tr. 431-432). The Court further notes that Dr. Wallace's 2006 report to the Social Security Administration indicated plaintiff had no restrictions on his activities of daily living (Tr. 341) and nothing in Dr. Wallace's progress notes from 2006 through 2007 shows any significant changes in plaintiff's condition to explain the extreme limitations imposed by Dr. Wallace in his 2007 report. In view of the conflicting evidence in the record, it was the ALJ's prerogative to discredit Dr. Wallace's opinion on plaintiff's functional capacity. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).

In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. *See also Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). The ALJ properly discounted plaintiff's credibility in view of the inconsistencies cited by the ALJ in his decision, plaintiff's testimony, and the other evidence indicating that plaintiff was not as limited as his testimony suggested. *See Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). The ALJ's credibility determination is supported by substantial evidence and should be affirmed.

17

## II. Use of left arm and hand

Plaintiff's second assignment of error asserts the ALJ erred when he assumed plaintiff had normal use of the non-dominant left hand and arm to perform the jobs identified by the VE. (Doc. 6 at 5). Plaintiff contends he does not have normal use of his left arm and hand, citing to his own testimony at the hearing (Tr. 566-67) and forms he completed for the Social Security Administration describing his limitations. (Tr. 76-78, 122, 133). However, plaintiff's argument is supported solely by his subjective complaints. Because the ALJ found plaintiff's testimony not fully credible, a finding this Court recommends be upheld, plaintiff's second assignment of error is not well-taken.

Moreover, plaintiff has pointed to no medical evidence showing his left arm functionally limits his ability to perform lifting and carrying for work activities. On the other hand, Dr. Wallace opined that plaintiff has the capacity to lift up to 10 pounds at one time which is consistent with the demands of sedentary work.[4] Since Dr. Wallace reported that plaintiff has no functional use of his right arm and hand, his opinion on lifting necessarily means that the 10 pounds he can lift must be with his left arm and hand. (Tr. 365). In addition, Dr. Fritzhand reported that plaintiff has normal functioning of his left upper extremity. (Tr. 431). Substantial evidence supports the ALJ's implicit finding that plaintiff could use his left upper extremity to perform the lifting and carrying demands of sedentary work.

## III. Vocational issues

Plaintiff contends the ALJ erred by relying on vocational testimony that was unreliable in

---

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

meeting the Commissioner's burden of proof at Step 5 of the sequential evaluation process.  The Court agrees.

The VE identified three jobs plaintiff could perform in the regional and national economies given his RFC for sedentary, unskilled work that could be performed by a person with use of only one arm.  The VE identified jobs as a dispatcher under DOT 239.167-014, which the VE described as unskilled, sedentary work (300 jobs regionally and 150,000 nationally) (Tr. 546); surveillance systems monitor under DOT 379.367-010, which the VE stated was unskilled, sedentary work (630 jobs regionally and 160,000 nationally) (Tr. 548); and small products assembler under DOT 706.684-022, which the VE did not qualify as unskilled or sedentary (130 jobs regionally and 240,000 nationally). (Tr. 548-49).

Two of the jobs identified by the VE conflict with the DOT numbers the VE used to support his own opinion about the jobs plaintiff could perform given his RFC.  The Commissioner essentially concedes that the dispatcher and small products assembler jobs identified by the VE conflict with the skill and exertional requirements set forth in the DOT sections cited by the VE and that plaintiff might not be able to perform those jobs. (Doc. 8 at 16). Nevertheless, the Commissioner argues that plaintiff is still capable of performing the remaining surveillance system monitor job of which there are 160,000 jobs in the national economy. Plaintiff contends that the VE's testimony concerning the surveillance system monitor job is unreliable given the conflicting evidence the VE gave on the other jobs he identified.

Whether or not 160,000 jobs in the national economy constitute a significant number of jobs as the Commissioner argues is not the relevant question.  The pertinent question for this Court's review is whether the VE's testimony about the surveillance systems monitor job is

19

reliable. The conflicting evidence presented in this case by the VE about the dispatcher and

small products assembler jobs he identified detracts from the credibility of his testimony.

Therefore, it was incumbent upon the ALJ to resolve the conflict before relying on the VE's

testimony to determine plaintiff could perform a significant number of jobs:

> If the ALJ would have perceived a conflict between the vocational expert's
> opinion and the job requirements . . . listed in the *DOT,* then the ALJ was obliged
> to elicit information to resolve the conflict. SSR 00-4p states that "[o]ccupational
> evidence provided by a VE or VS generally should be consistent with the
> occupational information supplied by the *DOT.* When there is an apparent
> unresolved conflict between VE or VS evidence and the *DOT,* the adjudicator
> must elicit a reasonable explanation for the conflict before relying on the VE or
> VS evidence to support a determination or decision about whether the claimant is
> disabled."

*Young v. Commissioner of Social Security*, 351 F. Supp.2d 644, 652 (E.D. Mich. 2004).

The Court recognizes that the DOT is not the only source of vocational evidence upon

which the ALJ may rely. *See* 20 C.F.R. § 404.1566; *Barker v. Shalala,* 40 F.3d 789, 795 (6th

Cir. 1994). But where, as here, the VE actually relied upon and cited to the DOT in support of

his testimony and such evidence is determined to be in conflict with the DOT, the ALJ must

resolve that inconsistency before making a determination that plaintiff can perform a significant

number of jobs in the economy. The ALJ's decision at Step 5 is not supported by substantial

evidence in this regard and should be reversed.

Plaintiff also argues the 1986 DOT definition of the surveillance systems monitor job is

outdated in light of the events of September 11, 2001. He asserts that given the heightened

security needs following September 11, it is doubtful that the surveillance systems monitor job

remains an unskilled, one and two step job at places of public transportation that a one-armed

person could perform.

20

Plaintiff has cited to no authority in support of his claim that the surveillance systems monitor job is now unskilled or that the DOT is outdated. Without any authority to support this proposition, the Court rejects plaintiff's claim.

Finally, plaintiff argues the hypothetical questions to the VE were improper because they "assumed, wrongly, normal dexterity and coordination and use of the left hand and arm to work competitively for 40 hours a week on unskilled jobs and because they left out the supported pain in the right hand and arm." (Doc. 6 at 10). The success of this argument is dependent upon the success of plaintiff's other assignments of error. As discussed above, the Court determines plaintiff's first, second, and third assignments of error are without merit. Therefore, the ALJ's hypothetical questions which did not incorporate the limitations proposed by plaintiff were not in error.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED and REMANDED** for further vocational evidence as set forth in the body of this opinion.

Date: 8/23/10

Timothy S. Hogan
United States Magistrate Judge

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RICHARD FLAMMER,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-898

Spiegel, J.
Hogan, M.J.

## NOTICE TO PARTIES REGARDING FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

22